**WHITE CHEMICAL COMPANY,**
Appellant,

v.

**Henry MORADIAN, Receiver in Bankruptcy of Cal-Zona Farms, a Corporation, and Henry Moradian, Trustee in Bankruptcy, et al., Appellee.**

No. 22788.

United States Court of Appeals
Ninth Circuit.

Oct. 17, 1969.

Joseph B. Miller (argued), of McKesson, Renaud, Cook, Miller & Cordova, Phoenix, Ariz., for appellant.

Robert H. Carlyn (argued), of Fennemore, Craig, von Ammon, McClennen & Udall, Phoenix, Ariz., for Southwest Forest Industries.

William D. Baker (argued), of Rawlins, Ellis, Burrus & Kiewit, Phoenix, Ariz., for Producers Cotton Oil Co.

Richard B. Wilks, James B. Rolle, III, Phoenix, Ariz., for appellee.

Before MERRILL and CARTER, Circuit Judges, and JAMESON*, District Judge.

JAMESON, District Judge:

This is an appeal from an order holding that receiver's certificates of indebtedness issued pursuant to Section 344 of the Bankruptcy Act [1] were entitled to priority over other costs of administration in Chapter XI proceeding.

On July 16, 1964, the debtor, Cal-Zona Farms, filed a petition proposing an arrangement under the provisions of Chapter XI of the Bankruptcy Act, 11 U.S.C. § 701 et seq. On July 22, 1964, appellee Henry Moradian was appointed receiver with authorization to continue the business.

On July 28, 1964, the referee entered an order authorizing the receiver to issue his certificate of indebtedness to appellee Producers Cotton Oil Company of Arizona in the sum of $30,000. An amended order was entered August 21, 1964, and an amended certificate was issued on the same date. There is now due and owing on this certificate the sum of $16,777.85.

Following a meeting of creditors on September 16, 1964, the referee on October 24, 1964, approved an agreement authorizing the receiver to issue a certificate of indebtedness to appellee Southwest Forest Industries, Inc., for $50,000.[2] A certificate in that amount was issued on October 26, 1964, and there is now due and owing thereon the sum of $50,000.

---

* Honorable William J. Jameson, United States Senior District Judge, Billings, Montana, sitting by designation.

1. Section 344 of the Bankruptcy Act (11 U.S.C. § 744) provides:
   "During the pendency of a proceeding for an arrangement, or after the confirmation of the arrangement where the court has retained jurisdiction, the court may upon cause shown authorize the receiver or trustee, or the debtor in possession, to issue certificates of indebtedness for cash, property, or other consideration approved by the court, upon such terms and conditions and with such security and priority in payment over existing obligations as in the particular case may be equitable."

2. All creditors, including appellant, received due notice of the petition to authorize the issuance of the certificate to Southwest. The order of July 28, 1964, authorized the certificate to Producers was entered ex parte.

The funds advanced by both Producers and Southwest were used to keep the debtor's business in operation.[3] In each case either the certificate itself or the order authorizing its issuance expressly provided that subject to valid liens, if any, existing at the commencement of the Chapter XI proceedings, the certificate "shall have precedence and priority over all other liens, claims and demands against the property and estate of the aforesaid Debtor and shall have preference and priority over the expenses of administration".

Beginning on August 1, 1964, appellant, White Chemical Company, furnished "fungicides, insecticides and fertilizers" to the debtor at the request of the receiver in the amount of $28,451.-28. The receiver did not issue a certificate of indebtedness to White; nor was he authorized to do so by the referee.[4]

On December 29, 1964, the referee entered an order adjudging the debtor a bankrupt and directing bankruptcy proceedings pursuant to the provisions of the Bankruptcy Act. The funds held by the trustee consist of the proceeds of sale of assets of the bankrupt and the proceeds received by the trustee from the settlement of a civil action and a turnover order. None of these funds represent any income from crops grown by the receiver or the trustee.

On September 27, 1967, the referee entered an order providing that the assets of the bankrupt's estate be distributed in the following order of priority: (1) fees and expenses of trustee, his attorney and accountant, receiver and his attorney, and bankrupt's attorney; (2) certificates of indebtedness issued to Producers and Southwest; and (3) the claim of White and another creditor as administrative expenses of the Chapter XI proceedings.

Upon review the district court on January 30, 1968, entered its opinion and order holding that the referee properly authorized the issuance of the certificates of indebtedness pursuant to section 344, but that the order of priority of payment should be modified by limiting the first priority to costs of administration in the superseding bankruptcy proceedings.[5]

In holding that the certificates of indebtedness are entitled to priority over other costs of administration in the Chapter XI proceedings, the district court said in part:

"* * * It is not unreasonable to assume that Southwest and Producers, in accepting the certificates and loaning the money to the debtor, placed reliance on the provisions of the certificates awarding them a priority over other costs of administration. The Referee obviously thought that such a priority was equitable at the time he issued the certificates. The only change in circumstances from the time the certificates were issued to the date of the final order in bankruptcy was that the arrangement attempt had failed, and there were insufficient funds in the bankrupt's estate to meet all of the costs of administration. The Referee does not allege that the priori-

3. The debtor was a farming corporation engaged in the production of lettuce. Producers and Southwest were major creditors. No funds were available to pay for labor, seed, fertilizer, water, or other costs of operation. The agreement with Southwest provided that all funds would be used to "meet current operating expenses arising out of the growing, harvesting, packing or shipping" of the fall lettuce crop.

4. Following bankruptcy adjudication, White, on January 15, 1964, filed its petition for payment of its claim and the "establishment of priority thereof". There is no evidence that White ever requested a certificate of indebtedness for the goods and services it furnished.

5. No appeal was taken by the receiver, his attorney or accountant. The sole issue is whether the district court properly accorded the certificates of indebtedness priority over the other costs of administration, including White's claim. Producers and Southwest agree that if the funds are insufficient to pay the certificate in full, they should share pro rata.

ty in the certificates was obtained by fraud or that the holders thereof have acted in bad faith. The Referee obviously expected the arrangement proceedings to work, and that the farming operation would net the estate considerable funds. The mere failure of this to happen and the resultant lack of funds to cover the administrative costs of the proceedings is not, in and of itself, grounds upon which one might, under his equitable powers, retract a previous guarantee of priority. This is, in fact, one of the very contingencies that the provisions as to priority would seem to guard against. To retract a priority which was granted under the equitable powers of the court because of the subsequent occurrence of events which accord the priority a meaningful status in the proceedings is to deny equity to the holders of the certificates, and render the initial power to award priorities a meaningless function."

Appellant contends that under section 64(a) (1) of the Bankruptcy Act[6] all costs of administration, including the certificates of indebtedness and appellant's claim, "are on a parity and should share on a pro rata basis in the assets available after the payment of costs of administration of the superseding bankruptcy proceedings"; that the referee had no power to give the certificates of indebtedness priority over the other costs of administration in the Chapter XI proceedings; and that under section 344 "the authority of the Court is restricted to granting unto Certificate holders security and priority over 'existing obligations' and not over other costs of administration".

■ Appellant argues that in giving what Collier terms a "super priority" to costs of administration in an ensuing bankruptcy proceeding,[7] "it is quite evident that Congress has intended this and this alone as the only priority among the various costs of administration that are incurred in the course of bankruptcy proceedings". We do not agree. Construing the provisions of section 344 with those of section 64(a) (1) and giving effect to each, we conclude that section 344 authorizes another priority for certificates of indebtedness, subject of course to the "super priority" given costs in the superseding bankruptcy.

The purpose of an arrrangement is to provide a plan whereby a debtor can settle or satisfy his unsecured debts.[8] Although bankruptcy is available should the arrangement fail,[9] the arrangement

---

6. Section 64(a) (1) of the Bankruptcy Act, 11 U.S.C. § 104(a) (1) provides in part:
   "(a) The debts to have priority, in advance of the payment of dividends to creditors, and to be paid in full out of bankrupt estates, and the order of payment, shall be (1) the costs and expenses of administration, including the actual and necessary costs and expenses of preserving the estate subsequent to filing the petition; * * * Where an order is entered in a proceeding under any chapter of this title directing that bankruptcy be proceeded with, the costs and expenses of administration incurred in the ensuing bankruptcy proceeding, including expenses necessarily incurred by a debtor in possession, receiver, or trustee in preparing the schedule and statement required to be filed by section 638, 778, or 883 of this title, shall have priority in advance of payment of the unpaid costs and expenses of administration, including the allowances provided for in such chapter, incurred in the superseded proceeding and in the suspended bankruptcy proceeding, if any; * * *."

7. Prior to a 1952 amendment to section 64(a) (1) costs of administration in a Chapter XI proceeding were on a parity with the costs of administration in a superseding bankruptcy. The amendment gave a "super priority" to the costs of administration incurred in the ensuing bankruptcy over the unpaid costs and expenses of administration incurred in the superseded proceeding. 3A Collier on Bankruptcy, Section 64.01 [3.2], p. 2058 (14th Ed. 1967).

8. Bankruptcy Act, Section 306(1), 11 U.S.C. § 706(1).

9. Bankruptcy Act, Section 376, 11 U.S.C. § 776.

is designed to avoid entirely the necessity of proceedings in bankruptcy and not merely provide a temporary stay from an unavoidable bankruptcy. In explaining the use of certificates of indebtedness under section 344 Collier says in part:

"Authority to issue certificates of indebtedness may be granted under § 344 'upon cause shown'. What constitutes sufficient cause necessarily depends upon the facts of each case. Money, property or other consideration can often be procured by an ordinary credit transaction, as is the more frequent practice in the continued operation of the debtor's business. Section 344 is usually resorted to where the business is being operated, but it essentially contemplates transactions of an unusual character, although not actually limited to such. In general, there should appear both benefit to the estate by the issuance of the certificates, and necessity for their issuance because the consideration to be acquired therewith cannot be acquired by an ordinary credit transaction. * * *" 8 Collier on Bankruptcy, Section 344, Subsection 6.40(4), p. 1003.

■ The certificate of indebtedness authorized by section 344 protects the creditor who provides necessary and otherwise unavailable credit, and who is unwilling to extend that credit without priority or security. It is clear from the petitions and orders in the Chapter XI proceedings in this case that it was necessary for the referee to issue the certificates of indebtedness in order to obtain funds to continue the business and harvest the debtor's lettuce crop. There is no evidence that credit was otherwise available; nor does appellant advance this contention. Rather it is argued that the goods and services furnished by White were on a parity with the funds obtained through the certificates of indebtedness, even though appellant did not seek or obtain any priority or security for its advances.

■ The priority of certificates of indebtedness issued under section 344 may properly extend to other costs of administration, as well as general claims, if the certificate so provides. We agree with Collier that, "The element of priority does not involve the status of the certificates only as against general claims. The relative status of the certificates as against other administration claims may also be fixed, and the certificates may be made superior, subordinate, or equal in status to those other administration claims." 8 Collier on Bankruptcy § 344, Subsection 6.40(7.1) p. 1005.[10]

■ It is likewise clear that the certificate of indebtedness to Southwest was issued after notice to appellant that it would provide for a priority over other costs of administration. The petition to confirm the arrangement with Southwest requested full disclosure of the agreement to the court and all creditors and that the agreement be "merely conditional until approved by the court after due notice * * * to creditors". Paragraph VI of the agreement provided that the certificate of indebtedness shall by its terms "have priority over expenses of administration and all other claims of creditors of Cal-Zone Farms". Appellant did not interpose any objection to the issuance of the certificate.

Finally, appellant argues that by using the phrase "existing obligations", Congress made it clear that certificates of indebtedness have no priority over other costs of administration, at least those incurred subsequent to the issuance of the certificate. While appellant makes a plausible argument in support of its contention, we are persuaded from the legislative history of section 344 and

10. The form of certificate suggested by Collier reads in part: "This certificate of indebtedness is by said order given priority in payment over outstanding obligations (of the debtor) * * * and over all costs and expenses of administration in said proceeding * * *". 10 Collier on Bankruptcy p. 1321, Form No. 3818.

**1020**

the obvious purpose and use of certificates of indebtedness that this contention must be rejected.

Section 344 was derived from § 77B (c) (3). The latter section, however, provided that certificates would be given security "over existing obligations, secured or unsecured, as may be lawful in the particular case". The words "secured or unsecured" were deleted when section 344 was enacted. The legislative history of section 344 indicates also that section 77B(c) "in turn derives the concept from the practice of issuing such certificates in equity receivership cases. * * * The practice is well-established and generally understood; and since the court has control and supervision, the danger of creating a disproportionate new indebtedness is measurably reduced. Furthermore, where the court retains jurisdiction after confirmation, the granting of an uncontrolled right to subsequent creditors to proceed against the debtor would conflict with the court's jurisdiction and result in confusion. This consequence is avoided by the provision for issuance of certificates, under the control of the court". Analysis of H.R. 12889, 74th Cong. 2d Sess. (1936) 54. 8 Collier's on Bankruptcy § 6.40, n. 6, p. 1000–1001.

To accord all subsequent creditors the same priority as certificates of indebtedness would clearly result in confusion and interfere with the court's control of the proceedings. To grant priority over existing obligations (whether general claims or cost of administration) required express statutory authorization. This language does not necessarily preclude granting priority to certificates over subsequent costs of administration. Subsequent creditors would of course extend credit with notice that the receiver's certificate had been issued with an express priority.

To grant priority to a certificate of indebtedness over costs of administration

incurred prior to the certificate and deny priority over costs incurred subsequent to the issuance of the certificate would be manifestly unfair and would not effectuate the purpose of obtaining credit to continue operation of the business. It is unlikely a person would advance credit in reliance upon a certificate of indebtedness if all subsequent creditors would share equally, regardless of whether they sought or obtained a certificate with provisions for security or priority.

If all costs of administration, whenever incurred, were to share equally and to have the same priority, there would be no reason for issuing certificates of indebtedness; and section 344, as the district court well said, would be rendered meaningless.

The parties agree that there is no case precisely in point.[11] We conclude that the district court adopted the reasonable interpretation of section 344 in the light of the purpose of its provisions.

The judgment is affirmed.

---

11. No useful purpose would be served in analyzing the cases cited by the respective parties. Both rely on certain language in the same cases in support of their respective positions. Considering each of the cases as a whole, we find nothing inconsistent with the views herein expressed.